IRVING, P.J.,
dissenting:
¶ 42. I disagree with the majority and the circuit court that the record supports a finding that Howard waived his constitutional right to testify in his trial, as there is no evidence supporting such a finding— only speculation and surmise — and I cannot agree that a finding of waiver of such a substantial constitutional right can be predicated on pure speculation and sur *576 mise. Therefore, I dissent. However, before discussing in detail my reasons for doing so, I briefly address the majority’s finding that Howard is procedurally barred from addressing the issue of waiver in this appeal.
¶43. The majority says that Howard has not raised on appeal the issue of whether the circuit court erred in finding no merit to his claim that his attorney denied him the right to testify at Howard’s trial. Howard’s first issue is that the circuit court erred “by denying him relief on his ‘right[-]to[-]testify’ claim without compelling tidal defense counsel to be at the evidentiary hearing.” It is clear from Howard’s statement of this first issue that he has generally raised as error the court’s denial of his PCR motion that alleges he was denied his right to testify.
¶44. The majority acknowledges that our law is well settled that when “a prisoner is proceeding pro se, [appellate courts] take that fact into account and, in our discretion, credit not so well pleaded allegations to the end that a prisoner’s meritorious complaint may not be lost because [it is] inartfully drafted.” Myers v. State, 583 So.2d 174, 176 (Miss.1991) (internal citations omitted). ' Interestingly, the majority attempts to sidestep the command of this law by asserting: “But the issue here is substance, not drafting.” Maj. Op. at (¶ 19). How was Howard to state the issue in his appellate brief without drafting the issue? That is exactly what he attempted to do in his first issue. While I agree that the literal wording of Howard’s first issue suggests that the focus is the alleged error of the circuit court in not having required trial counsel to be present at the hearing. However, a thorough and in depth reading of Howard’s brief compels the conclusion that Howard was simply trying to explain why the circuit court erred. In other words, in Howard’s view, there was no evidence contradicting his testimony, and if the circuit court was unwilling to believe him, then the court should have required trial counsel to be present and testify differently.
¶ 45. It is not a fair reading of Howard’s brief to conclude that he has not raised the issue that the circuit court erred in finding that he waived his right to testify. Admittedly, Howard’s issues are inart-fully drafted and stray some from the singular issue that the supreme court allowed to be pursued, but in my judgment, as a pro se advocate, he has done remarkably well. I now turn to the discussion of my differences with the majority on the merits of Howard’s claim that he was denied his constitutional right to testify and that the circuit court erred in finding that he waived that right.
¶ 46. On November 8, 2012, Howard filed his third application with the supreme court for leave to proceed with a PCR motion in the circuit court. In this application, he claimed, as he had done in previous applications, that his trial counsel had refused or failed to allow him to testify during Howard’s trial. The Mississippi Supreme Court ordered the State to respond to Howard’s application. The State responded that prior to the recess, following the State’s case, the trial court informed Howard that he had a right to testify no matter his counsel’s wishes. Therefore, according to the State, during the recess Howard must have informed his counsel that Howard did not want to testify because, otherwise, he would have interrupted the proceedings and informed the court that his counsel was preventing him from testifying.
¶47. After receiving the State’s response, the supreme court granted leave to Howard to proceed with his PCR motion and ordered the circuit court to conduct an evidentiary hearing on Howard’s PCR *577 claim that his trial counsel refused or failed to allow him to testify in his trial. Howard proceeded pro se at the PCR hearing, and neither Howard nor the State called Howard’s trial counsel as a witness. Howard explained that he asked his trial counsel to come to the PCR hearing, but his trial counsel refused. While our law is clear that a movant in a PCR hearing shoulders the burden of proof, I find it difficult to understand why the State did not produce Howard’s trial counsel to refute Howard’s testimony if in fact Howard was not telling the truth about what had transpired during his trial.
¶48. The only evidence presented at the hearing was Howard’s testimony, the relevant portion of which I set forth verbatim as follows:
BY MR. HOWARD: All right. Excuse me. Let me back up a minute. I may be moving too fast for myself.
On the day of trial, me and my attorney discussed me testifying. He put you [ (reference is to the circuit judge) ] on notice during his opening statements that I wanted to testify![4]] And during the trial, Pm thinking — me and him talking — I’m going to testify. I tell him I want to testify and tell my side of the story. He says okay. The witnesses get on the stand, and they tell their side of the story. We go to recess. We come back and you — you read me my rights about testifying. And when you asked me did I want to make a motion, he interrupted me—
BY THE - COURT: Actually, I wasn’t addressing that to you. I was addressing it to him. I was looking at him. Because procedurally, in order to preserve anything for appeal purposes—
BY MR. HOWARD: Yes.
BY THE COURT: — your lawyer has to move for a directed verdict when the State gets through putting on their case. It’s a procedural thing where you can’t raise any issue if you don’t make that objection — I mean, make that motion. So it’s a procedural thing that was directed to him. I wasn’t asking you if you had any motion to make.
BY MR. HOWARD: Okay. When he answered — I guess in — in my favor or whatnot, and he motioned for a directed verdict and you denied it, and we went to recess, Your Honor, I’m still under the impression — I’m under oath; I’m going to get on the stand to testify to what allegedly happened.
BY THE COURT: What happened during that recess between you and your lawyer?
BY MR. HOWARD: I told him I wanted to get on the stand. This is what I told him. I told him I wanted to get on the stand to testify to what happened. And he said he was going to put me on the stand, Your Honor. And when we come back in the courtroom, he said he rest the case. And I’m trying to figure out why he ain’t put me on the stand. Because like I said, I don’t know what rests mean. So I’m thinking like, okay, well, if he ain’t putting me on the stand, *578 maybe I’m going to testify in just a little while. He’s saying, Hold on. Hold on. And we recess again and go to lunch, Your Honor. When we come back from lunch, I don’t come to the courtroom. By the time I come to the courtroom, y’all doing something about jury instructions. I don’t know nothing about legal — I’m still thinking I’m going to have an opportunity to get on the stand to tell my side of the story, Your Honor, because I’m the one that’s able to tell the true side of what happened that day. So if I can’t get on the stand and tell my side of the story, then the jury never hears my side. It only' hears what the prosecution is offering.
Now, the jury go in — they come out, and you give them the jury instructions, and they go in and start the verdict. I’m still thinking I’m going to testify until they come back with a verdict of guilty. I’m telling my attorney, Why can’t I get on the stand? He’s saying, Hold on. Hold on. I’m like, I need to get on the stand. Why can’t I tell the judge what’s going on? He’s saying, Just hold on a second. Just hold on. So I’m just doing what he’s telling me not to do. I didn’t know that I could have interrupted all the court procedures and stand up and say, Hey, hold up, I want to testify. I didn’t know I could do that, Your Honor. If I knew that — if I knew then what I know now, I would have testified immediately. I would have got up and did that. I didn’t know that — I was very unfamiliar with the law, with court procedure.
BY THE COURT: Well, then, tell me what you thought I was telling you— when I said, “You’ve got the right to testify even if your lawyer does not want you to, you’ve got the right to testify.” What did you think I meant when I said that?
BY MR. HOWARD: I have — I was — I was completely dumbfounded—
BY THE COURT: Did you not listen to that first instruction—
BY MR. HOWARD: You didn’t say—
BY THE COURT: Listen to me.
BY MR. HOWARD: Okay.
BY THE COURT: When the trial first began, I read an instruction to this jury laying out the procedure that we were going to have throughout the trial. I told them that witnesses from both sides could be called. That at the conclusion of witnesses, we would go over jury instructions. The jury instructions would then be read to them. We would hear closing argument.
So you knew from the start because that — I read that to the jury and you were sitting right there so you knew what the Court procedure was, didn’t you, from my instructing the jury at the very beginning of the trial?
BY MR. HOWARD: No, I didn’t—
BY THE COURT: Were you not listening to that?
BY MR. HOWARD: I was unfamiliar with the law, Your Honor.
BY THE COURT: So was the jury. That’s why I was educating them. But you were sitting there to hear the same thing they did—
BY MR. HOWARD: The jury—
BY THE COURT: — at the first of the trial.
BY MR. HOWARD: Your Honor, the jury wasn’t on trial. I was on trial, Your Honor. And I really didn’t understand the law at that time. I mean, I didn’t understand that — that I could interrupt the jury — interrupt the proceedings at any time and say Hey, I want — I really didn’t understand that, Your Hon- or. I didn’t understand that I had the right to stop. You advised me of my *579 rights, Your Honor, but you didn’t explain to ... me when I was supposed to testify. You never explained that to me in the record or you didn’t get it on record with me denying that I didn’t want to testify.
BY THE COURT: Have you got any case law saying that’s a requirement? Have you — in all your mobile research, have you found anywhere the Court’s required to go on record and have the defendant say, “Well, I do not want to testify”?
BY MR. HOWARD: Hold on just a second, Your Honor.
(PAUSE)
BY MR. HOWARD: Your Honor, I have a case, Dizon v. State — it’s a similar case to Culberson v. State, [412 So.2d 1184 (Miss.1982) ] where it says that this Court suggested in Culberson that the trial judge question the defendant outside the presence of the jury regarding defendant’s right to testify on his own behalf. From review of the record, this would be the most prudent course of action for the judge to take. Trial counsel stated during opening statements that Dizon would testify. This in itself should have been enough to trigger an inquiry by the judge as whether or not it had been explained to Dizon that he had a constitutional right to testify and whether or not he had waived that right. And it further says, “The dissent argues that we have today created a hard and fast due process procedural right which must be complied with in each case. We find that the judge was on notice that Dizon wanted to testify. The judge should have erred on the side of caution and questioned Dizon according to Cul-berson. In fact, the dissent even agrees that it would have been a better practice for the trial judge to follow the suggestion in Culberson and question Dizon then and there about his decision not to testify.” And this is Dizon v. State, where his case was overturned. And his case is almost similar to mine. Your Honor.
BY THE COURT REPORTER: Can you give me that cite — what’s the first name?
BY MR. HOWARD: Dizon d-i-z-o-n v. State, 749 So.2d 996 ([Miss.]1999).
This case is — and Culberson are similar to my case where it says that if the defendant wants to testify or doesn’t wish to testify, that the Court should make record of it, Your Honor, so the question never arises in the future.
And Your Honor, I wanted to testify. I was the only one that was going to be able to refute the State’s theory of what happened, of the alleged gun and of me attacking the victim or the fight or the events that took place that day. I wasn’t awarded a fair trial, an opportunity to explain to the jury my confrontation with Craig Smith on the day in question, Your Honor.
All I was afforded was a day in court, and I wasn’t given time — I really wanted to tell my side of the story. I felt like the jury would have understood what went on that day through me and the other witnesses that the State used against me. She coincided with everything that I said, Your Honor. Mine and her statements were the same.
I never denied then. I never denied the attack, Your Honor. I never denied anything. All I ever did deny was me demanding money or taking money or hitting him with a gun, Your Honor. The only evidence of the crime I denied, Your Honor.
But as far as the assault part of it, I never denied that. I did assault him. I never denied that, Your Honor. I just *580 wanted to get on the stand to be able to express that to the jury, Your Honor—
BY THE COURT: That’s probably why the lawyer advised you not to because if you would have gotten on the stand and admitted that you committed the crime of aggravated assault — .
¶ 49. Based on this testimony, the circuit court denied Howard’s PCR motion, making the following finding:
The court finds nothing before it other than Mr. Howard’s seven-years-later-after-the-fact statement that he wanted to testify. But does not believe at the time of the trial that he desired to testify because the Court is of the opinion that if Mr. Howard had wanted to testify, he would have notified the Court at that time, having been advised by the Court of his right to do so.
So the court is of the opinion that because Mr. Howard did not raise that issue with the trial court and [has] not offered any proof other than his self-serving testimony today in support of his motion, the motion should be denied. And therefore, the motion is denied.
¶ 50. As argued by Howard at his PCR hearing, I believe this case is factually similar to Dizon. In Dizon, Edison Dizon claimed in a motion filed with the Mississippi Supreme Court, while his direct appeal was pending, that he had been denied his constitutional right to testify. The supreme court “remanded the case to the trial court for an evidentiary hearing on the issue of whether Dizon had been properly informed of and advised of his right to testify on his own behalf, and whether he had effectively waived that right under Culberson.” Dizon, 749 So.2d at 998(¶ 10).
At the evidentiary hearing Dizon’s trial attorney testified that he had talked with Dizon regarding what his testimony would be if he testified at trial. He testified that he could not definitively say that he had advised Dizon that he had a right to testify. After the State rested, trial counsel met with Dizon in a holding cell and discussed Dizon’s family and military record and what he would testify to if put on the stand. Trial counsel stated:
And then, I think we just probably left it up in the air or either he decided that he was going to testify. I’m not sure which it was. But we came back up here and began trial again. And I leaned over to him and I said, Well, are you ready to do this? And he said no. So, I assumed from that, he’d changed his mind about testifying or made up his mind about whether he was going to testify or not. And so we rested at that point.
Trial counsel testified he had no doubt that Dizon had voluntarily waived his right to testify at the trial at the time the defense rested ....[, although] he could not say with certainty that he ever advised Dizon of his right to testify.
[[Image here]]
Dizon definitively testified that he was never informed of his right to testify by trial counsel [and] that he spoke with his trial counsel a couple of times before trial and repeatedly told him that he wanted to testify.
Id. at 999-1000 (¶¶ 16-19).
¶ 51. In deciding that Dizon had been denied his constitutional right to testify, the Dizon court noted:
The judge was put on notice that Dizon wanted to testify. During opening statements, trial counsel told the jury that Dizon was not going to get on the witness stand and deny what happened. In fact, he would testify about what did actually happen when [the victim] was beaten.
[[Image here]]
*581 Trial counsel stated during opening statements that Dizon would testify. This in itself should have been enough to trigger an inquiry by the judge as to whether or not it had been explained to Dizon that he had a constitutional right to testify and whether or not he had waived that right.
Id. at 1000-01 (¶¶22, 25) (emphasis added).
¶ 52. In this case, just as in Dizon, Howard’s trial lawyer stated during opening statements that Howard would testify, but this did not occur. I acknowledge that our case is not on all-fours with Dizon, as the issue in Dizon was twofold — whether Dizon had been fully advised of his constitutional right to testify and, if so, whether he had waived that right. I also acknowledge that the ruling in Dizon turned on the supreme court’s finding that Dizon had not been so advised, while in our case the sole issue is whether Howard waived his right to testify. There is no doubt that Howard knew he had a right to testify in his own defense, because the circuit judge clearly had advised him of that right. Nevertheless, I find that under the authority of Dizon, since the circuit judge had advised Howard of his right to testify and had heard Howard’s counsel promise during opening statements that Howard would testify, the circuit judge should have inquired if Howard had elected to forgo his constitutional right to testify when Howard’s attorney rested Howard’s case without putting Howard on the witness stand as promised.
¶ 53. The majority states that the supreme court’s unambiguous statement in Dizon — that trial counsel’s opening statement that Dizon would testify should, in and of itself, have been enough to trigger an inquiry by the judge as to whether or not Dizon had waived that right — was advisory and that the Dizon court rejected the notion that, in Culberson, it had created' a hard and fast due process procedural right which must be complied with in each case. I agree with the majority that the Dizon court, in response to Justice Smith’s dissent asserting that the majority had created a hard and fast due process procedural right, rejected the dissent’s characterization of what it had done. Dizon, 749 So.2d at 1000-01 (¶¶ 25-26). However, the majority fails to fully embrace what the Dizon court went on to say after responding to the mischaracterization of its holding by the dissent: “We find that the judge was on notice that Dizon wanted to testify. The judge should have erred on the side of caution and questioned Dizon according to Culberson.” In Culberson, the supreme court had stated:
We suggest to the trial judges of the state that, in any case where a defendant does not testify, before the case is submitted to the jury, the defendant should be called before the court out of the presence of the jury, and advised of his right to testify. If the defendant states he does not wish to testify, he may not be forced to take the stand; however, if he states that he wants to testify he should be permitted to do so. A record should be made of this so that no question about defendant’s waiver of his right to testify should ever arise in the future.
Culberson, 412 So.2d at 1186-87. Likewise, in this case, the circuit judge “should have erred on the side of caution and questioned” Howard as to whether he had waived his right to testify.
¶ 54. Further, I note that after conducting the evidentiary hearing on the issue of whether Howard had waived his right to testify, the circuit judge based his rejection of Howard’s claim on his finding that Howard’s testimony was not credible. I acknowledge that the circuit court has ab *582 solute discretion with respect to the credibility of witnesses and that it was well within its discretion to disbelieve Howard. The problem here, however, with the circuit judge’s finding is that there is no evidence in the record contradicting Howard’s version of what transpired. Therefore, there is no basis for the affirmative finding by the circuit judge that Howard waived his right to testify. It is of particular interest that the State, in its response to the supreme court, and the circuit court, at the conclusion of the PCR hearing, both concluded that if Howard had not waived his right to testify, he would have interrupted the proceedings and informed the court that his counsel was preventing him from testifying. This conclusion assumes that Howard was obligated to ignore proper courtroom protocol — specifically, that a party who is represented by an attorney speaks to the court only through that attorney.
¶ 55. I should also note that the majority correctly points out that it was Howard’s responsibility to produce witnesses to support his claim. But as Howard points out, there are only two individuals that know what happened, Howard and his attorney. So while the State did not have the responsibility to produce any witnesses at the PCR hearing, it seems to me that, if it wanted to prevail, it had a responsibility to refute, if indeed it could, the evidence that it knew Howard would offer. The State participated in the PCR hearing and did not offer anything to contradict Howard’s testimony. So it is equally logical to assume that the State must have known that Howard’s trial counsel’s testimony would not have been helpful to the State. After all, as I have pointed out, the reasoning employed by the State at the PCR hearing apparently had been proved unconvincing with the supreme court. Finally, I should mention the obvious. Because Howard was serving a mandatory twenty-five-year sentence, he was limited in what he could get done in preparation for his PCR hearing. As to his failure to have his trial counsel present, he testified as follows: “But I’ve been trying to contact him, Your Honor, I’ve had my family try to contact him to get him to come to court and to be a witness in this case. And he told them that through [sic] such short notice he couldn’t make it. Your Honor.”
¶ 56. I conclude by noting that the facts here are unlike the facts in a typical PCR case, where the defendant seeks to contradict his prior sworn testimony. There is a plethora of cases holding that a defendant’s prior sworn testimony trumps his belated contradictory assertions in his PCR motion. Here, there is no prior sworn testimony by Howard stating that he did not want to testify at his trial. Therefore, I find that the circuit court erred in dismissing Howard’s PCR motion, as it is clear that the record before us and the evidence produced at the PCR eviden-tiary hearing compel a finding that Howard was denied his constitutional right to testify at his trial. Consequently, I would reverse and render the judgment of the circuit court, vacate Howard’s conviction and sentence, and restore this case to the active criminal docket of the Circuit Court of Attala County for further proceedings.
JAMES, J., JOINS THIS OPINION IN PART.

. During opening statements at Howard's trial, his lawyer made the following statement to the court and jury:
This is the real story of what happened. Earlier that day, Mr. Smith, Craig Smith, made a pass at Mr. Howard. I mean, that's probably going to be uncontradicted. My client's going to get up. He said that night — my client was offended.
So he saw Mr. Smith that night. My client’s going to testify and he told the police that night that he saw Mr. Smith go to make the deposit. Once he made the deposit, he walked up to him in a bad kind of way — he was furious — basically telling him, you know, "I'm not gay. I am not homosexual”, and he hit him.